UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

WANDA GAIL WARD,

                Plaintiff,

v.                                     Case No.  5:05-cv-456-Oc-10GRJ

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, OLD DOMINION
INSURANCE COMPANY, INSURANCE BY
KEN BROWN, INC.,

                Defendants.
_____/

## REPORT AND RECOMMENDATION[1]

Pending before the Court is Plaintiff's Motion For Remand.  (Doc. 9.)  Defendant State Farm Mutual Automobile Insurance Company filed a memorandum in opposition and, thus, the matter is ripe for review.  For the following reasons, Plaintiff's Motion For Remand (Doc. 9) should be **GRANTED**.

## I. BACKGROUND

Plaintiff, Wanda Gail Ward, is a citizen of the State of Florida and the Personal Representative of the Estate of LaWanda Janette Griner Glunt, a/k/a L. Janette Griner ("Glunt").[2]  Defendant State Farm Mutual Automobile Insurance Company ("State Farm") is an Illinois corporation which maintains its principal place of business in

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation.  Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

[2] Doc. 2, ¶ 2.

Illinois.[3]  Defendants Old Dominion Insurance Company and Insurance By Ken Brown, Inc. are both Florida corporations (hereinafter Old Dominion and Ken Brown will be referred to collectively as the "Non-Diverse Defendants.")[4]

According to Plaintiff's Complaint, Plaintiff brings this cause of action as the assignee of Sean Decter ("Decter"), Great White Pools, Inc. ("Great White"), and Jesse Heckman ("Heckman").[5]  Decter owned Great White and employed Heckman.[6]  Decter had obtained insurance policies on his vehicles from State Farm, some of which were used in his business.[7]  The State Farm policies provide for $100,000 bodily injury coverage on one of Decter's vehicles and $25,000 bodily injury coverage on the others.[8] Decter allegedly contacted Ken Brown in order to obtain additional insurance for the automobiles used by Great White, an excess or umbrella insurance policy, and insurance coverage for Great White and its employees.[9]  According to Plaintiff, Ken Brown conveyed Great White's insurance needs to Old Dominion, but no policy was issued nor was adequate coverage provided.[10]

---

[3] *Id.* at ¶ 3; Doc. 1, ¶ 4.

[4] Doc. 2 at ¶¶ 4-5.

[5] *Id.* at ¶ 20.

[6] *Id.* at 6.

[7] *Id.* at ¶¶ 7-9.

[8] *Id.* at ¶ 10.

[9] *Id.* at ¶ 11.

[10] *Id.* at ¶¶ 12-13.

On November 7, 2000, Heckman, while acting in the course and scope of his employment with Great White, negligently operated a vehicle owned by Decter and insured by State Farm, resulting in the death of Glunt in an automobile accident.[11] Decter discovered after November 7, 2000 that the vehicle Heckman drove was only insured for $25,000 in bodily injury coverage.[12]

Ward, on behalf of the Estate of Glunt, sued Decter for Glunt's death.[13]  Demand was made on Decter to the extent of the State Farm coverage but State Farm refused to settle for the policy limits. Demand was also made on Great White, Decter and Heckman to the extent of the coverage that allegedly should have been provided by Ken Brown and Old Dominion. Ken Brown and Old Dominion refused to settle the suit on behalf of Decter or Great White for among other reasons the fact that they had not issued a policy.[14]  Ward, the personal representative of the estate of Glunt, obtained an excess judgment in the amount of $1,000,000 against Decter, Heckman, and Great White on September 2, 2004.[15]  Thereafter, Decter, Heckman, and Great White assigned to Ward their choses in action against the Defendants.

As a result, Ward filed this action against the Defendants asserting claims for negligence (Count I) and bad faith (Count II) against State Farm, claims for negligence (Count III) and bad faith (Count IV) against Old Dominion, and claims for negligence

---

[11] *Id.* at ¶ 14.

[12] *Id.*

[13] *Id.* at ¶ 16.

[14] *Id.* at ¶¶ 17-18.

[15] *Id.* at ¶ 19.

(Count V) and breach of fiduciary duty (Count VI) against Ken Brown.  (Doc. 2.)  Plaintiff filed this action in the Circuit Court for the Fifth Judicial Circuit, In and For Marion County, Florida on August 22, 2005.[16]

On November 9, 2005, Defendant State Farm removed the case to this Court on the basis of diversity of jurisdiction.[17]  According to State Farm, Plaintiff fraudulently joined the Non-Diverse Defendants, so that the Court can ignore Ken Brown and Old Dominion for purposes of diversity jurisdiction. State Farm advances two arguments to support fraudulent joinder. First, State Farm contends that there is no possibility of a bad faith claim against Old Dominion under Florida law and thus this claim can be ignored for purposes of removal.  Second, State Farm argues that the negligence claims against the Non-Diverse Defendants are misjoined because there are no allegations of joint and several liability among the Defendants nor are there any common issues of law and fact.[18]

On November 29, 2005, Plaintiff filed a Motion to Remand (Doc. 9) claiming that there is a lack of diversity jurisdiction for removal.  Plaintiff asserts that she did not fraudulently join the Non-Diverse Defendants because her Complaint pleads "colorable claims"[19] against the Non-Diverse Defendants and that there is "alternative liability and a real connection among the various claims, which do arise from common transactions

---

[16] Doc. 1 at ¶ 1.

[17] *Id.* at 1 and ¶ 10.

[18] *Id.* at 4-5; Doc. 10.

[19] Doc. 9 at 6-8.

4

and occurrences."[20]   Additionally, Plaintiff contends she is entitled to attorney's fees and expenses for the time and resources spent in responding to Defendant's improper removal.[21]

## II.  DISCUSSION

It is "by now axiomatic that the inferior federal courts are courts of limited jurisdiction," empowered "to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution and which have been entrusted to them by a jurisdictional grant authorized by Congress."[22] A defendant may "remove a case to federal court only if the district court would have had jurisdiction over the case had the case been brought there originally."[23] District courts have original jurisdiction over diversity cases, pursuant to 28 U.S.C. §1332, and over matters arising under federal law, pursuant to 28 U.S.C. §1331.[24]

Where a plaintiff has objected to a defendant's removal, the burden of proof is on the defendant, as the removing party, to show that the action was properly removed.[25] While district courts are encouraged to resolve all doubts about jurisdiction in favor of

---

[20] Doc. 9 at 10.

[21] *See id.*

[22] Univ. of S. Ala. v. The Am. Tobacco Co., 168 F.3d 405, 409 (11th Cir. 1999) (citing Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir.1994)).

[23] Whitt v. Sherman Int'l Corp., 147 F.3d 1325, 1329 (11th Cir. 1998).

[24] *Id.*

[25] *See* Woods v. Firestone Tire & Rubber Co., 560 F. Supp. 588, 590 (S.D. Fla. 1983).

5

remand to state court,[26] courts "should be cautious about remand, lest it erroneously deprive [a] defendant of the right to a federal forum."[27]

Fraudulent joinder is a judicially-created doctrine that provides an exception to the requirement of complete diversity.[28] While "the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P.  56(b)", the jurisdictional inquiry "must not subsume substantive determination."[29] It follows that the court "must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff."[30] These determinations are based on Plaintiff's pleadings at the time of removal, and on the affidavits and deposition transcripts submitted by the parties.[31]  Here, neither party has submitted any affidavits nor deposition transcripts.  Accordingly, the Court relies solely on Plaintiff's Complaint.

Fraudulent joinder has been recognized in three situations.[32] The first is when there is no possibility that the plaintiff can prove a cause of action against the resident

---

[26] *See* University of South Alabama, 168 F.3d at 411.

[27] Tran v. Waste Mgmt., Inc., 290 F. Supp. 2d 1286, 1292 (M.D. Fla. 2003).

[28] Triggs v. John Crump Toyota, Inc., 154 F. 3d 1284, 1287 (11th Cir. 1998).

[29] Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997) (citing B, Inc. v. Miller Brewing Co., 663 F. 2d 545, 549 (5th Cir. Unit A 1981)).

[30] *Id.*

[31] *Id.* at 1538.

[32] *See* Riggs, 154 F.3d at 1287

(non-diverse) defendant.[33] The second is when there is outright fraud in the plaintiff's pleading of jurisdictional facts.[34] The Eleventh Circuit recognized a third situation of fraudulent joinder in *Tapscott v. MS Dealer Service Corp.*[35] -- i.e., where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant.[36]  The first and third types of fraudulent joinder are raised by Defendant in its Notice of Removal.[37]

To prevail on its Motion To Remand, the Plaintiff simply must show that any one claim against any one Non-Diverse Defendant has not been fraudulently joined. Conversely, State Farm, as the removing party, must show that there has been fraudulent joinder with respect to each claim against each Non-Diverse Defendant. For the following reasons, State Farm has failed to meet this burden.

### A.  Plaintiff's Bad Faith Claims

Plaintiff's claim for bad faith against Old Dominion is based on the premise that Old Dominion failed to exercise a reasonable duty of care to investigate the incident that led to Great White's insurance claim and failed to participate in good faith negotiations to settle the claim.  Plaintiff alleges that Old Dominion should have known that a

---

[33]*See id. citing* Choker v. Amoco Oil Co., 709 F. 2d 1433, 1440 (11th Cir. 1983), *superseded by statute on other grounds, see* Georgetown Manor, Inc. v. Ethan Allen, Inc., 991 F. 2d 1533 (11th Cir. 1993).

[34]*See id.*

[35] 77 F.3d 1353 (11th Cir. 1996), *abrogated on other grounds,* Cohen v. Office Depot, Inc., 204 F.3d. 1069 (11th Cir. 2000).

[36] Triggs, 154 F.3d at 1287(citing Tapscott, 77 F. 3d at 1355.)

[37]Doc. 1 at ¶¶ 12-14.

judgment in favor of Plaintiff and against its insured, Great White, would be entered in excess of $500,000, the amount Plaintiff claims was the face value of the insurance policy Old Dominion should have issued. By refusing to settle the claims after demand, Plaintiff alleges that Old Dominion acted against the interests of its insured, Great White, thus establishing a claim for bad faith.[38]

State Farm counters that a bad faith claim cannot be brought against Old Dominion under Florida law for the simple reason that Old Dominion never issued a written policy to Great White.  Plaintiff responds by arguing that the simple fact a policy has not been issued is insufficient to protect an insurance company against a bad faith claim, where there was in the first place an obligation to issue the policy.

At the heart of the issue of whether a bad faith claim can be asserted under Florida law is resolution of whether Great White was insured by Old Dominion. Assuming there was a relationship of insurer and insured Plaintiff arguably could  bring a bad faith claim against Old Dominion.  However, when determining whether there has been fraudulent joinder for removal purposes

> [f]ederal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law.  If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the defendants, the federal court must find that joinder was proper and remand the case to state court.[39]

As such, the Court is not permitted to weigh the merits of Plaintiff's claim but rather must only focus upon whether there is a possibility of such a claim under Florida law.

---

[38] Doc. 2 at 10-12.

[39] Crowe v. Coleman, 113 F.3d 1536, 1537 (11th Cir. 1997) (internal quotations and citation omitted).

8

Admittedly, while most cases for statutory bad faith against insurance companies involve a written policy of insurance this case does not. Rather, Plaintiff alleges that despite the lack of a written insurance policy it, nonetheless, had an insurance relationship with Old Dominion.[40]

To determine whether Florida law would recognize a claim for bad faith in the absence of a written policy, the Court must turn to the Florida Bad Faith Statute. The Florida Bad Faith Statute, Fla. Stat. § 624.155, provides in relevant part that:

> [a]ny person may bring a civil action against an insurer when such a person is damaged . . . [b]y the commission of any of the following acts by the insurer: 1.  Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests.[41]

The statute further provides that in filing a bad faith claim, the plaintiff "shall state with specificity" the relevant language from the statute which the insurer allegedly violated, "the facts and circumstances giving rise to the violation, the name of any individual involved in the violation," "specific policy language that is relevant to the violation, if any," and "a statement that the notice is given in order to perfect the right to pursue the civil remedy authorized by" the statute.[42]  There is nothing in the statute - nor any case law interpreting the statute - that affirmatively requires that there be a written policy as a condition to bringing a bad faith action.  The statute only requires that a litigant cite language from the policy *if* it [the policy language] pertains to the violation. In addition,

---

[40] Doc. 2 at 10-12 and ¶¶ 13, 18.

[41] Fla. Stat. § 624.155(1)(a) & (b)(1) (2005).

[42] Fla. Stat. § 624.155(3)(b)(1-4).

9

the statute provides that where the action is brought by a third party claimant, that party does not need to cite specific policy language, if the insurer has not provided a copy of the policy to the third party pursuant to a written request.[43]

Because neither party has filed any affidavits nor depositions in this matter, the Court is limited to the allegations in the Complaint to determine whether the Plaintiff has stated the possibility of a cause of action under Florida law. While the Court is skeptical that Plaintiff will be successful in proving a claim against Old Dominion fo bad faith the Court is prohibited from examining the merits of Plaintiff's claim in the absence of any affidavits or other proof to support fraudulent joinder. Accordingly, because the Plaintiff alleges in her Complaint the existence of an insurance relationship between Old Dominion and Great White - and that pursuant to the insurer-insured relationship Old Dominion acted in bad faith by failing to investigate and settle the claim against Great White - the Court finds that State Farm has failed to meet its burden of establishing that there is no possibility of a claim for bad faith against Old Dominion under Fla. Stat. §§ 624.155.

Therefore, the Court concludes that for purposes of removal Old Dominion was not fraudulently joined in this action. For this reason alone, Plaintiff's Motion To Remand is due to be **GRANTED.**[44]

---

[43] *Id.* at § 624.155(3)(b)(4).

[44]
 Defendant also argues that the negligence and breach of fiduciary duty claims against Old Dominion and Ken Brown were misjoined in this action because there is no joint, several, or alternative liability , nor any real connection between the claims against it and the Non-Diverse Defendants. While there is a meritorious argument that any claims Great White may have against Ken Brown concerning the performance of his duties as an insurance agent are separate and apart from the bad faith and negligence claims Plaintiff asserts against the two insurance companies, State Farm and Old

(continued…)

**B.  Plaintiff's Request for Attorney's Fees and Costs**

Lastly, Plaintiff requests that the Court award her the attorney's fees and costs she incurred in securing the remand of this action.  The United States Supreme Court has recently held that "[a]bsent unusual circumstances, courts may award attorney's fees under §1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, where an objective reasonable basis exists, fees should be denied."[45]  The Court concludes that although one of Defendant's arguments in support of fraudulent joinder was rejected by the Court, Defendant State Farm's arguments in support of removal were, nonetheless, objectively reasonable. Accordingly, Plaintiff's request for attorney's fees and costs is due to be **DENIED**.

### III.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that Plaintiff's Motion For Remand (Doc. 9) be **GRANTED**, and Plaintiff's request for attorney's fees and costs be **DENIED**.

**IN CHAMBERS** in Ocala, Florida, on March 7, 2006.

GARY R. JONES
United States Magistrate Judge

Copies to:
The Honorable Wm. Terrell Hodges
Senior United States District Judge

Counsel of Record

---

[44](…continued)
Dominion, the Court does not need to address the sufficiency of this argument for purposes of establishing fraudulent joinder for removal purposes in view of the fact that, as discussed *supra.,* Defendant has failed to establish that the claim against Old Dominion was fraudulently joined. Because this alone is sufficient to destroy diversity jurisdiction, the merits of Defendant's argument with regard to misjoinder is irrelevant.

[45] Martin v. Franklin Capital Corp., 126 S. Ct. 704, 711 (2005).